IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:23-CV-630-FL

| | |
|---|---|
| SONYA SHAW Ph.D., | ) |
| Plaintiff, | ) |
| v. | ) |
| TOWN OF GARNER; RODNEY DICKERSON Town Manager, in his individual capacity; MATT ROYLANCE Assistant Town Manager, in his individual capacity; and B. D. SECHLER Human Resources Manager, in his individual capacity, | ) ORDER |
| Defendants. | ) |

This matter is before the court upon plaintiff's motions to alter judgment under Federal Rule of Civil Procedure 59(e) (DE 30) and to amend her complaint (DE 31). Defendants have responded in opposition, and the issues raised are ripe for ruling. For the following reasons, plaintiff's motions are granted.

## STATEMENT OF THE CASE

Plaintiff commenced this wrongful termination action October 30, 2023, asserting claims under 42 U.S.C. §§ 1981 and 1983, against her former employer, defendant Town of Garner ("town"), and its town manager defendant Rodney Dickerson ("Dickerson"), assistant town manager defendant Matt Roylance ("Roylance"), and human resources manager defendant B. D. Sechler ("Sechler") (collectively, "individual defendants"). Plaintiff asserted claims for retaliation in violation of the First Amendment, for race and sex discrimination, and for violation of her due

process rights. Plaintiff sought back pay, reinstatement or front pay, liquidated and compensatory damages, as well as interest, fees and costs.

Upon defendants' motion, the court dismissed plaintiff's claims for failure to state a claim upon which relief can be granted in its order entered April 23, 2024, and judgment entered that same date. See Shaw v. Town of Garner, No. 5:23-CV-630-FL, 2024 WL 1747631 (E.D.N.C. Apr. 23, 2024) (DE 28).

Plaintiff filed 28 days thereafter the instant motion for reconsideration of the court's April 23, 2024, order and judgment, as well as the instant motion to amend her complaint, relying upon a proposed amended complaint and a redline. Defendants responded in opposition to plaintiff's motions.

## STATEMENT OF FACTS

The court incorporates herein by reference the statement of facts in the court's April 23, 2024, order. (Order (DE 28) at 2-10). Additional facts alleged in the proposed amended complaint, pertinent to the analysis herein, may be summarized as follows.

In about July 2020, "to encourage a safe working environment for all of her employees, [p]laintiff asked for department volunteers to help develop a [Parks, Recreation, and Cultural Resources ("PRCR")] diversity and equity training committee." (Prop. Am. Compl. (DE 32-1) ¶89). "The committee was comprised of department volunteers who developed the activities and materials to share with the entire department." (Id. ¶ 90). "The training sessions occurred during the time of racial unrest in the US and during the Covid pandemic." (Id.).

"Plaintiff felt the importance of preparing her department for the changing needs of serving a diverse community, particularly since the Town offered no training or opportunities for employees to discuss the changing racial dynamics taking place across the country." (Id. ¶ 91).

2

"At that time, protests were occurring across the country for racial equity after George Floyd's death," and "[n]ew Covid protocols and practices were being established" altering "service delivery" for "parks and recreation agencies across" the country. (Id. ¶ 92). "Diversity and equity trainings began occurring instantly across the country in public, private and educational settings." (Id. ¶ 93).

"Being a national leader in the parks and recreation field, Plaintiff attended such training sessions and felt it was important enough to share this information with department staff responsible for delivering in-person and virtual services to the general public." (Id. ¶ 94). Plaintiff "met with managers in the PRCR department to discuss their interest in conducting an equity session with department staff." (Id. ¶ 95). Plaintiff "knew that social equity was a major pillar of and focus in the parks and recreation profession nationally and statewide, and she shared this with her entire department and subsequently formed a team of diverse department staff to coordinate the project." (Id.). "The group continued to meet to develop a session and to send out to staff when finalized." (Id.).

Plaintiff communicated "concerns about equity [that] were not limited to intradepartmental matters." (Id. ¶ 96). "Per the Diversity, Equity and Inclusion ['DEI'] in Parks and Recreation publication by the National Recreation and Parks Association, '[v]irtually every park and recreation agency across the nation ha[d] activities and policies that promote DEI outcomes, and '[a]gencies also have established DEI practices that shape how they interact with their communities.'" (Id.). As such, plaintiff "communicate[d] to her employees that DEI is not only relevant to employment, but also to the community that the PRCR serves." (Id.). "Plaintiff was concerned for DEI on all of these levels and sought to communicate this to her staff and management." (Id.).

3

Additional facts, previously alleged in the original complaint, complete plaintiff's account of how her concerns about equity training unfolded. On August 4, 2020, plaintiff emailed information about the training to her department. The next day, plaintiff "learned from her assistant director Smith that some of the PRCR staff members were discussing being uncomfortable having the equity session and indicating that they did not want to talk about race at work." (Id. ¶ 106). Plaintiff then met with Roylance, who "shared that 'they' (it was not clear if it was Roylance or HR) had received receiving complaints from staff of all races about the equity training session." (Id. ¶ 107). As plaintiff "began to explain to Roylance the same content she had shared with Smith, Roylance interrupted her and told her to cancel the training." (Id. ¶ 108). Plaintiff "shared her disappointment with his lack of trust in her and the confusion that would be created by last minute cancellation." (Id. ¶ 109).

On August 6, 2020, plaintiff shared with individual defendants "her concerns about the cancellation of the session, the fact that she had not been notified or given an opportunity to address specific staff concerns prior to the decision being made to cancel the session, and requesting a discussion with Roylance, the planning committee, and staff to discuss concerns about the training." (Id. ¶ 113). "No one, including Sechler, responded to the request nor did any provide any opportunity for follow-up between management or staff." (Id. ¶ 114). However, on August 18, 2020, they agreed to "support using [a] State association's training." (Id. ¶ 115).

Six days later, plaintiff was called to a meeting with Dickerson, who "shared that because he had received complaints from staff about PRCR department leadership, . . . he had hired a consultant, . . . to conduct an investigation with department staff about workplace environment, policies and procedures." (Id. ¶ 117). Thereafter, they "discussed the need for building staff back

4

up and providing training on improving communication, building trust, diversity and equity." (Id. ¶ 132).

Then, on October 28, 2020, Dickerson met with plaintiff and a newly hired attorney for the Town, at which point Dickerson terminated plaintiff, effective immediately, on the basis of the following:

> a. Inappropriate personal conduct, demonstrated inefficiency or incompetence in the performance of her duties;
>
> b. Inappropriate personal conduct, discourteous treatment of the public or other employee(s);
>
> c. Inappropriate personal conduct, failure to carry out supervisory responsibilities including failure to enforce Town policies concerning cash handling and use of credit cards;
>
> d. Detrimental personal conduct, the functioning of the Town may be or has been impaired;
>
> e. Detrimental personal conduct, public confidence in government is likely to be undermined; and
>
> f. Detrimental personal conduct, falsification of records to grant special privileges through manipulation of performance evaluation scores.

(Id. ¶ 142). According to the complaint, the town retained white, male and/or female employees despite allegations of similar misbehavior, and several women "in supervisory positions have left their employment with the [the town] due to similar unfair treatment." (Id. ¶ 144). Additional allegations regarding comparison to other employees will be discussed in the analysis herein.

## COURT'S DISCUSSION

A. Standard of Review

Where a motion to alter judgment under Rule 59(e) seeks to amend a complaint, the court "need only ask whether the amendment should be granted, just as it would on a prejudgment motion to amend pursuant to Fed.R.Civ.P. 15(a)." Katyle v. Penn Nat. Gaming, Inc., 637 F.3d

5

462, 471 (4th Cir. 2011). "In other words, a court should evaluate [it] under the same legal standard as a similar motion filed before judgment was entered—for prejudice, bad faith, or futility." Id.[1] "A proposed amendment is . . . futile if the claim it presents would not survive a motion to dismiss." Save Our Sound OBX, Inc. v. N. Carolina Dep't of Transportation, 914 F.3d 213, 228 (4th Cir. 2019).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

B. Analysis

    1. First Amendment

Plaintiff argues that her original allegations stated a claim under the First Amendment, and she contends the claim is further supported by her proposed amended allegations. Because the court agrees with plaintiff that her proposed amended allegations state a claim, the court does not address her first argument in favor of reconsideration.

---

[1] Throughout this order, internal citations and quotation marks are omitted from citations unless otherwise specified.

The court incorporates herein by reference the legal standards bearing on plaintiff's First Amendment claim from its April 23, 2024, order. (See Order (DE 28) at 11-14). By way of summary, "[i]n order to make out a First Amendment retaliation claim, a plaintiff must show that (1) [s]he spoke as a citizen on a matter of public concern, rather than as an employee on a matter of personal interest; (2) the employee's interest in [her] expression outweighed the employer's interest in providing effective and efficient services to the public; and (3) the employee's speech was a substantial factor in the adverse employment action." Massaro v. Fairfax Cnty., 95 F.4th 895, 905 (4th Cir. 2024).

With respect to the first element, plaintiff has alleged new facts in her proposed amended complaint sufficient to give rise of an inference that she spoke on a matter of public concern, rather than as an employee on a matter of personal interest. In particular, plaintiff alleges she was "preparing her department for the changing needs of serving a diverse community, particularly since the [t]own offered no training or opportunities for employees to discuss the changing racial dynamics taking place across the country." (Prop. Am. Compl. (DE 32-1) ¶ 91). Citing protests "occurring across the country for racial equity," plaintiff alleges that "[d]iversity and equity trainings began occurring instantly across the country in public, private and educational settings." (Id. ¶¶ 92-93). Plaintiff personally "attended such training sessions," and she suggests she "share[d] this information with department staff responsible for delivering in-person and virtual services to the general public." (Id. ¶ 94). She allegedly communicated to them her "concerns about equity" in the town and nationwide, and "that social equity was a major pillar of and focus in the parks and recreation profession nationally and statewide." (Id. ¶ 95-96). She identified national publications promoting "Diversity, Equity and Inclusion" best practices in how agencies

7

"interact with their communities," and plaintiff allegedly "communicate[d] this to her staff and management." (Id. ¶ 96).

These facts, not alleged in the original complaint, give rise to an inference that her "[s]peech involve[d] a matter of public concern [where] it affect[ed] the social, political, or general well-being of [the] community." Edwards v. City of Goldsboro, 178 F.3d 231, 246 (4th Cir. 1999). Viewing the allegations in the light most favorable to plaintiff, it is plausible that "the public or the community is likely to be truly concerned with or interested in the particular expression" by plaintiff, and it is not "essentially a private matter between employer and employee." Id. at 247; see Connick v. Myers, 461 U.S. 138, 148 n. 8 (1983) (recognizing that the "right to protest racial discrimination—a matter inherently of public concern—is not forfeited by [an employee's] choice of a private forum"). Where previously the court determined "plaintiff allegedly did not communicate with her supervisors to draw public attention to the problems she saw with the town," (April 23, 2024, Order (DE 28) at 13), the new factual allegations are sufficient to draw a contrary inference. Thus, the first element of a First Amendment claim is met.

With respect to the second element, the government's "burden in justifying a particular discharge varies depending upon the nature of the employee's expression." Connick, 461 U.S. at 150. Here, plaintiff asserts the town terminated her, inter alia, for "attempting to provide her staff with diversity and equity training which was a matter of public concern." (Prop. Am. Compl. (DE 32-1) ¶ 182). The complaint thus permits an inference that her First Amendment interests outweighed the town's alleged interest in terminating plaintiff allegedly for her expressions about such diversity and equity training, satisfying the second element of a First Amendment claim.

The same allegations support the third element, "that her speech was a substantial factor in the adverse employment action." Massaro, 95 F.4th at 905. Further, this third element is supported

by the timing between plaintiff's alleged communications regarding her "concerns about equity" in July 2020, her emails to the department about training in August 2020, and defendant Roylance's cancellation of the training and commencement of an investigation into plaintiff that same month, culminating in plaintiff's termination in October 2020. (Prop. Am. Compl. (DE 32-1) ¶¶ 96, 105-108, 113-117).

In sum, plaintiff has alleged facts in her proposed amended complaint stating a First Amendment claim.

In their opposition, defendants argue that this court should not reach plaintiff's motion to amend because plaintiff has not provided grounds for reconsideration of the court's April 23, 2024, order. For example, defendants point out that this court correctly dismissed plaintiff's First Amendment claim on the basis of the allegations in the original complaint. This argument is beside the point. It is true that "a district court may not grant a post-judgment motion to amend the complaint unless the court first vacates its judgment pursuant to Fed.R.Civ.P. 59(e)." Katyle, 637 F.3d at 470. Critically, however, "[t]o determine whether vacatur is warranted, . . . the court need not concern itself with [that] rule['s] legal standards." Id. at 471. Rather, the court must apply only the standard for a "motion to amend." Id. "When the motion to vacate the judgment is made under Rule 59(e), the broad standard for allowing a court to grant the motion allows the court simply to turn to the standard applicable to the motion to amend." Daulatzai v. Maryland, 97 F.4th 166, 178–79 (4th Cir. 2024). "In other words, Rule 15(a) and Rule 59(e) motions rise and fall together." Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 378 (4th Cir. 2012)

Accordingly, having concluded that leave to amend the complaint to assert a First Amendment claim should be allowed, plaintiff's motions in this part are granted.

9

## 2. Race and Sex Discrimination

Plaintiff's proposed amended complaint also includes new allegations that remedy the deficiencies in plaintiff's race and sex discrimination claims identified by the court in its April 23, 2024, order. In particular, previously, plaintiff did not allege a "'plausible basis for believing others were actually similarly situated' and 'that any impropriety was comparable to the acts the plaintiff was alleged to have committed.'" (Order (DE 28) at 15, 17) (quoting Coleman v. Maryland Ct. of Appeals, 626 F.3d 187, 191 (4th Cir. 2010)).

Now, plaintiff alleges a basis for believing she was similarly situated to other supervisory and management personnel, such as Tom Maynard, her predecessor as director of the PRCR department; defendant Sechler; Tony Beasley, inspections director; Ashley Wimberly, public works supervisor; Forest Jones and Tyson Langdon, public works directors; and Jack Baldwin, recreation supervisor. Plaintiff alleges specific acts of impropriety for each, including actions in violation of town policies similar to policies allegedly violated by plaintiff, resulting in less severe disciplinary action. (Prop. Am. Compl. (DE 32-1) ¶¶ 143-171).

Plaintiff also alleges that "other women in supervisory positions have left their employment with [the town] due to similar unfair treatment," now specifying these individuals and their positions. (Id. ¶¶ 144-145). Further, plaintiff includes new allegations concerning retention of one white employee, Kimberly Storey, despite her "rude, disrespectful, inconsiderate, dismissive, and unprofessional" interactions within plaintiff's department. (Id. ¶¶ 146-149). She alleges one white male supervisory town employee used derogatory language towards black male employees, two others had "problems with management" of black male employees, and another white male employee was confrontational towards plaintiff. (Id. ¶¶ 157, 160, 164). Finally, in addition to plaintiff's allegedly-rebuffed expressions of concern regarding diversity and equity training,

plaintiff alleges she felt "pressured to sign" an "affidavit to address public concerns about the Sons of Confederate Veterans and the Town's Christmas parade." (Id. ¶ 65).

Taken together, and drawing inferences from the allegations in plaintiff's favor, the new allegations show "plausibly that [plaintiff] was treated differently from others who were similarly situated and that the unequal treatment was the result of discriminatory animus." Sheppard v. Visitors of Virginia State Univ., 993 F.3d 230, 238 (4th Cir. 2021). Accordingly, plaintiff's proposed amended complaint states a claim for race and sex discrimination under 42 U.S.C. §§ 1981 and 1983.[2]

Thus, plaintiff's motions are granted in this part to allow plaintiff leave to file an amended complaint asserting claims for race and sex discrimination.

3. Due Process

Plaintiff asserted in her original complaint a Due Process claim, under the Fifth and Fourteenth Amendments, premised upon a deprivation of a liberty interest, which the court dismissed for failure to state a claim. (See Order (DE 28) at 18-20). Plaintiff deletes assertion of this claim in her proposed amended complaint. (See, e.g., Redline Proposed Am. Compl. (DE 34) ¶¶ 2, 188-189, 193). Accordingly, the court deems this claim abandoned. There is thus no Due Process claim proceeding forward as part of plaintiff's proposed amended complaint, and the court's allowance of plaintiff's instant motions does not include leave to assert this abandoned Due Process claim.

---

[2] Previously, the court did "not reach the heightened 'but-for causation standard' for a § 1981 race discrimination claim, which requires a plaintiff to plead that 'but for race, [she] would not have suffered the loss of a legally protected right.' Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media, 140 S. Ct. 1009, 1019 (2020)." (Order (DE 28) at 15 n. 3). Here, the court allows plaintiff's claims to proceed under both section 1981 and 1983, recognizing that the claims may be differentiated further upon a more complete record.

## CONCLUSION

Based on the forgoing, plaintiff's motions to alter judgment (DE 30) and to amend (DE 31) are GRANTED. Judgment entered August 23, 2024, is VACATED, and the clerk is DIRECTED to reopen this case. Plaintiff is DIRECTED to file her first amended complaint, as proposed in DE 32-1 and 32-2, within 5 days from date of entry of this order.

SO ORDERED, this the 12th day of September, 2024.

_____
LOUISE W. FLANAGAN
United States District Judge

12

Case 5:23-cv-00630-FL   Document 36   Filed 09/12/24   Page 12 of 12